ORIGINAL

FILED
JAN 23 2014
CLERK JB
United States Bankruptcy Court
San Jose, California

1 | William C. Milks, III (State Bar Number 114083)
2 | Law Offices of William C. Milks, III
   | 960 San Antonio Road, Suite 200A
3 | Palo Alto, CA 94303
   | Tel.: (650) 930-6780
4 | Fax: (650) 813-1805
   | Email: bmilks@sbcglobal.net
5 |
6 | Attorneys for Defendants

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

In re CT DRIVES, LLC,

    Debtor.

_____

FRED HJELMESET, Chapter 7 Trustee,

    Plaintiff,

vs.

WAYNE K. HIGASHI, individually and as Trustee of THE HIGASHI TRUST and of THE HIGASHI FAMILY TRUST, aka THE HIGASHI FAMILY REVISED TRUST, aka the 2010 HIGASHI FAMILY TRUST; ROSE HIGASHI, individually and as Trustee of THE HIGASHI FAMILY TRUST, aka THE HIGASHI FAMILY REVISED TRUST, aka the 2010 HIGASHI FAMILY TRUST; INNOVATIVE TECHNOLOGIES LICENSING AND MANAGEMENT CORPORATION, a California corporation, dba Epilogics, dba The Epilogics Group; EPX, INC., a California corporation; ES DESIGN, LLC, a California limited liability company; THOMAS L. BAHRICK, an individual; BARRY N. YOUNG, an individual; ROBERT MARANGELL, an individual; PERISHO TOMBOR BROWN, PC, a California corporation; LANLOGIC, INC., a California corporation; and SPRULI, LLC, a California limited liability company,

    Defendants.

Case No. 11-60198 SLJ

Chapter 7

Adversary No. 13-05154

**DEFENDANTS' STATUS CONFERENCE STATEMENT**

Date: January 30, 2014
Time: 2:00 PM
Judge: Hon. Stephen L. Johnson

1
DEFENDANTS' STATUS CONFERENCE STATEMENT

Defendants Wayne K. Higashi, individually and as Trustee of The 2007 Higashi Revocable Trust and the 1992 Higashi Revocable Trust, aka The Higashi Family Revised Trust, aka the 2010 Higashi Family Trust; Rose Higashi, individually and as Trustee of The 2007 Higashi Revocable Trust, aka The Higashi Family Revised Trust, aka the 2010 Higashi Family Trust; Innovative Technologies Licensing and Management Corporation, dba Epilogics, dba The Epilogics Group; EPX, Inc.; ES Designs, LLC; Thomas L. Bahrick; Barry N. Young; Robert Marangell; Perisho Tombor Brown, PC; Lanlogic, Inc., a California corporation; and Spruli, LLC, (collectively referred to herein as "Defendants") respectfully submit the following Status Conference Statement pursuant to the Order Setting Telephonic Status Conference, Setting Initial Disclosures, and Discovery Conference dated November 1, 2013.

## STATUS OF THE CASE

**1. Each Legal Theory on Which the Party Relies and a Brief General Statement of the Facts Supporting Such Theories.**

The Complaint for (1) Recovery of Avoidable Transfers; (2) Conversion; and (3) Breach of Fiduciary Duty, filed on October 31, 2013 (the "Complaint") of Plaintiff Fred Hjelmeset, Chapter 7 Trustee of CT Drives, LLC (referred to herein as "Debtor"), contains 16 claims seeking to recover transferred property of Debtor or the value thereof (Complaint, ¶ 115). Defendants have denied all claims and have asserted affirmative defenses as to all claims.

Plaintiff alleges Defendant Wayne K. Higashi, and trusts of which Mr. Higashi is a trustee or beneficiary, received transfers of and converted Debtor property including money, intellectual property, or other assets (in excess of $1M) (Complaint, ¶¶ 20, 27, and 103) without Debtor receiving reasonably equivalent value in exchange (Complaint, ¶¶ 22, 29, and 104). The facts will show that Mr. Higashi did not receive transfers of money beyond the amount of the compensation that Debtor agreed to pay Mr. Higashi for managing Debtor. In 2008, Mr. Higashi became the Chief Executive Officer (Manager) of Debtor and was paid an agreed consulting fee by Debtor specified by the Operating Agreement of Debtor. Automobile lease expenses for Mr. Higashi that paid by Debtor were offset by an equal reduction in the consulting fee paid to Mr. Higashi. The total of the lease payments and amounts actually paid to Mr. Higashi equaled the

| | |
|---|---|
| 1 | amount of Mr. Higashi's consulting fee set forth in the Operating Agreement. Debtor did not |
| 2 | pay any additional money to Mr. Higashi. The facts will further show that Mr. Higashi has not |
| 3 | received any transfers of intellectual property or other assets of Debtor. |
| 4 |       Additionally, Plaintiff alleges that Mr. Higashi caused patents, or other intellectual |
| 5 | property, good will, and/or other assets of Debtor to be transferred on or after the date of the |
| 6 | bankruptcy petition filed by Debtor on November 1, 2011, either directly or through Innovative |
| 7 | Technologies Licensing and Management Corporation, to Spruli, LLC (Complaint, ¶ 91) without |
| 8 | authorization (Complaint, ¶ 92). The facts will show that Mr. Higashi has not made any such |
| 9 | unauthorized transfers of Debtor's property. |
| 10 |       Plaintiff also alleges that Mr. Higashi appropriated, scrapped, sold, and/or offered for |
| 11 | sale other assets of Debtor after the date of the bankruptcy petition filed by Debtor on November |
| 12 | 1, 2011 (Complaint, ¶¶ 95) without authorization (Complaint, ¶¶ 96). The facts will show that |
| 13 | Mr. Higashi has not appropriated, scrapped, sold, and/or offered for sale other assets of Debtor |
| 14 | since November 1, 2011 without the knowledge and consent of Plaintiff. The facts will show |
| 15 | that the Facet pulley inventory was scrapped before the date of the bankruptcy petition filed by |
| 16 | Debtor on November 1, 2011. Additionally, approximately 4,000 experimental design pulleys, |
| 17 | ovens, and hardware for assembling pulleys stored were scrapped only after an appraiser |
| 18 | appointed by Plaintiff inspected those items and Plaintiff approved the scrapping of those items. |
| 19 |       Furthermore, Plaintiff alleges that Mr. Higashi authorized transfers of Debtor property |
| 20 | (Complaint, ¶ 108) in breach of his fiduciary duty (Complaint, ¶ 110). The facts will show that |
| 21 | Mr. Higashi simply has not made any unauthorized transfers of Debtor's property. |
| 22 |       Additionally, Plaintiff alleges that Debtor transferred money (in excess of $1M) to |
| 23 | Innovative Technologies Licensing and Management Corporation to benefit that company and/or |
| 24 | Mr. Higashi (Complaint, ¶ 34) without Debtor receiving reasonably equivalent value in exchange |
| 25 | (Complaint, ¶ 36). The facts will show that the Operating Agreement of Debtor specifies a |
| 26 | management fee of $50,000 per annum was to be paid by Debtor to Innovative Technologies |
| 27 | Licensing and Management Corporation. The arrangement called for most indirect expenses of |
| 28 | Debtor to be paid by Innovative Technologies Licensing and Management Corporation, which |

had a well-established reputation in the business community and could obtain credit for purchases that were to be reimbursed by Debtor. Later, as Debtor established its own credit, many expenses were paid directly by Debtor, but the Innovative Technologies Licensing and Management Corporation credit card continued to be used for other expenses of Debtor such as travel and purchases of operating supplies. Also, all payroll of Debtor was processed through Innovative Technologies Licensing and Management Corporation and its payroll account with Intuit Payroll Service. All employees of Debtor were therefore employed by Innovative Technologies Licensing and Management Corporation, and Debtor was billed for reimbursement of its payroll by Innovative Technologies Licensing and Management Corporation. Intuit, in turn, made all required tax payments on behalf of Debtor to all Federal and State tax authorities. Additionally, various outlays were paid to Innovative Technologies Licensing and Management Corporation to repay EPX, Inc. for the loan to Debtor from EPX.

More particularly, Plaintiff alleges that Debtor transferred money (in excess of $423k) to EPX, Inc. to benefit that company and/or Mr. Higashi (Complaint, ¶ 41) without Debtor receiving reasonably equivalent value in exchange (Complaint, ¶ 44). The facts will show that In August 2010, Connard Cali, the President of one of the founders (Conntechnical Industries, Inc.) of Debtor offered to forgive Debtor's note in its entirety, relinquish all interest in Debtor, and release Debtor from all current and future liability to him and his companies in exchange for $250,000 in cash. Debtor borrowed $250,000 from EPX, an unrelated entity managed by Innovative Technologies Licensing and Management Corporation, in exchange for a convertible note. Approximately one week later, when presented with a cashier's check, payable to Conntechnical, drawn on the Union Bank, Mr. Cali reneged on his commitment claiming he had a better offer. In December 2010, Debtor returned to EPX the cash borrowed to repurchase Debtor's note. The transfers of funds to EPX in December 2010 were to repay the aforementioned $250,000 note to EPX and to accept equity investments from the liquidated Limited Partners of EPX. The transfers/payments were made in several steps, because Debtor did not have $250,000 available to complete the transfers in a single transaction.

Additionally, Plaintiff alleges that Debtor paid expenses of ES Designs, LLC to benefit

4

Adv. No. 13-05154-05159    DEFENDANTS' 13-05152 CONFERENCE STATEMENT
Case: 13-05154-05159    Doc# 30    Filed: 01/23/14    Entered: 01/24/14 13:16:52    Page 4 of 7

that company and/or Mr. Higashi (Complaint, ¶ 49) without Debtor receiving reasonably equivalent value in exchange (Complaint, ¶ 51). The facts will show that the expenses paid were offset against the purchase cost of springs (a major pulley component) supplied by ES Designs. No expenses were incurred by ES Designs after it was effectively dissolved on June 30, 2011 upon the written consent of a majority of its members, although a formal dissolution was not filed with the Secretary of State. The assets of ES Designs were assigned to Debtor in exchange for the forgiveness of ES Design's outstanding debt to owed to Debtor.

Also, Plaintiff alleges that Debtor transferred money and/or equity interests (at least $110k) as pre-payment for future legal services by Thomas L. Bahrick (Complaint, ¶ 56), but Mr. Bahrick failed to perform all prepaid services without Debtor receiving reasonably equivalent value in exchange (Complaint, ¶ 58). The facts will show that Mr. Bahrick rendered legal services to Debtor in an amount that exceeded the agreed to amount of prepaid legal services.

Additionally, Plaintiff alleges that Debtor transferred money and/or equity interests (at least $110k) as pre-payment for future legal services by Barry N. Young (Complaint, ¶ 63), but Mr. Young failed to perform all prepaid services without Debtor receiving reasonably equivalent value in exchange (Complaint, ¶ 65). The facts will show that Mr. Young rendered legal services to Debtor in an amount that exceeded the agreed to amount of prepaid legal services.

Furthermore, Plaintiff alleges that Mr. Higashi caused Debtor to make payments to Mr. Young on or after the date of the bankruptcy petition filed by Debtor on November 1, 2011, (Complaint, ¶ 99) without authorization (Complaint, ¶ 100). The facts will show that any payments to Mr. Young were made to preserve the intellectual property assets of Debtor.

Also, Plaintiff alleges that Debtor transferred money and/or equity interests (at least $110k) as pre-payment for future accounting services by Perisho Tombor Brown, PC (Complaint, ¶ 70), but Perisho Tombor Brown failed to perform all prepaid services without Debtor receiving reasonably equivalent value in exchange (Complaint, ¶ 72). The facts will show that Perisho Tombor Brown provided accounting services to Debtor in an amount that exceeded the agreed to amount of prepaid accounting services.

Case: 13-05154   Doc# 30   Filed: 01/23/14   Entered: 01/24/14 13:16:52   Page 5 of 7

Additionally, Plaintiff alleges that Debtor transferred money and/or equity interests (at least $66k) as pre-payment for future Internet hosting services by Lanlogic, Inc. (Complaint, ¶ 77), but Lanlogic failed to perform all prepaid services without Debtor receiving reasonably equivalent value in exchange (Complaint, ¶ 79). The facts will show that Lanlogic provided Internet hosting and email services to Debtor in an amount that exceeded the agreed to amount of prepaid Internet hosting services.

Also, Plaintiff alleges that Debtor transferred money and/or equity interests (at least $480k) as pre-payment for future bookkeeping services by Robert Marangell (Complaint, ¶ 84), but Mr. Marangell failed to perform all prepaid services without Debtor receiving reasonably equivalent value in exchange (Complaint, ¶ 86). The facts will show that Debtor did not pay any money to Mr. Marangell, and that Mr. Marangell fully performed the bookkeeping services agreed to between him and the debtor.

In short, the facts will demonstrate that the allegations contained in the Complaint are without merit. Therefore, Plaintiff does not have any viable claims against the Defendants.

**2. Proposed Cut-Off Dates for Discovery and Pretrial Motions and the Estimated Time for Trial and Desired Trial Dates.**

  a. Defendants propose a fact discovery cut-off date of July 18, 2014.
  b. Defendants propose a cut-off date for motions relating to fact discovery of August 1, 2014.
  c. Defendants propose an expert discovery cut-off date of October 10, 2014.
  d. Defendants propose a cut-off date for dispositive motions of October 24, 2014.
  e. Defendants propose a cut-off date for pretrial motions (motions *in limine*, *Daubert* motions, *etc.*) of December 1, 2014.
  f. Defendants estimate the time for trial will be 5-6 days.
  g. Defendants propose a trial date beginning December 8, 2014, or, alternatively, beginning December 15, 2014.

### 3. A Statement by Non-Governmental Corporate Party Identifying Its Parent Corporations and Any Publicly Held Company That Owns 10% or More of the Party's Stock.

None of the Defendant corporate parties, namely, Innovative Technologies Licensing and Management Corporation, EPX, Inc., ES Designs, LLC, Perisho Tombor Brown, PC, or Lanlogic, Inc., has a parent corporation. Furthermore, no publicly held corporation owns more than 10% of the stock or units of any of the Defendant corporate parties.

### 4. If a Jury Demand Is Made, the Demanding Party Shall Address (I) Whether the Demand Is Timely; (II) Whether the Demanding Party Has a Right to Jury Trial; (III) Whether All Parties Consent.

The pending action is an adversary proceeding. Defendants filed a timely jury demand in their Answer filed on December 16, 2014. Bankruptcy Local Rule 9015-1 provides that Fed. R. Civ. P. Rule 38(a)-(d) granting Defendants a right to a jury trial applies in adversary proceedings. No consent is therefore required.

Respectfully submitted,

Dated: 01/23/2014

William C. Milks, III
Law Offices of William C. Milks, III
960 San Antonio Road, Suite 200A
Palo Alto, CA 94303
Tel.: (650) 930-6780
Fax: (650) 813-1805
Email: bmilks@sbcglobal.net

Attorneys for Defendants