Peter C. Bronson, Cal. Bar No. 60669
LAW OFFICES OF PETER C. BRONSON
A Professional Corporation
770 L Street, Suite 950
Sacramento, California 95814
Telephone: (916) 444-1110
Facsimile: (916) 361-6046

Special Counsel for Plaintiff Fred Hjelmeset,
Chapter 7 Trustee

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re*: | Case No. 11-60198 SLJ |
| CT DRIVES, LLC, | Chapter 7 |
| Debtor. | Adv. No. 13-05154 |
| FRED HJELMESET, Chapter 7 Trustee, | **JOINT PRE-TRIAL CONFERENCE STATEMENT** |
| Plaintiff, | |
| v. | Trial: February 5-6 and 8-9, 2018<br>Time: 9:00 a.m.<br>Place: U.S. Courthouse<br>280 South First Street<br>San Jose, CA 95113<br>Judge: Hon. Stephen L. Johnson |
| WAYNE K. HIGASHI, individually and as Trustee of THE WAYNE K. HIGASHI TRUST and of THE HIGASHI FAMILY TRUST, aka THE HIGASHI FAMILY REVISED TRUST, aka the 2010 HIGASHI FAMILY TRUST; ROSE HIGASHI, individually and as Trustee of THE HIGASHI FAMILY TRUST, aka THE HIGASHI FAMILY REVISED TRUST, aka the 2010 HIGASHI FAMILY TRUST; INNOVATIVE TECHNOLOGIES LICENSING AND MANAGEMENT CORPORATION, a California corporation, dba Epilogics, dba The Epilogics Group; EPX, INC., a California corporation; ES DESIGN, LLC, a California limited liability company; THOMAS L. BAHRICK, an individual; BARRY N. YOUNG, an individual; ROBERT MARANGELL, an individual; PERISHO TOMBOR BROWN, PC, a California corporation; LANLOGIC, INC., a California corporation; and SPRULI, LLC, a California limited liability company,<br>Defendants. | |

Plaintiff Fred Hjelmeset, Chapter 7 Trustee (the "Trustee"), on the one side, and defendants Wayne K. Higashi, individually and as Trustee of the Wayne K. Higashi Trust, etc.; Rose Higashi as Trustee of the Higashi Family Trust, etc.; Innovative Technologies Licensing and Management Corporation, dba Epilogics, dba The Epilogics Group; EPX, Inc.; ES Design, LLC; and Spruli, LLC (collectively "Defendants"), respectfully submit this Joint Pre-Trial Conference Statement in accordance with the Court's Trial Scheduling Order entered June 28, 2017.[1]

**A. The following facts are admitted and require no proof:**

1. Debtor CT Drives, LLC ("Debtor" or "CTD") filed its Chapter 11 petition on November 1, 2011 (the "Petition Date").

2. Debtor's bankruptcy case was converted to one under Chapter 7 of the Bankruptcy Code by Order entered on October 16, 2012.

3. Plaintiff Fred Hjelmeset ("Plaintiff") is, and has been at all relevant times, the duly appointed and qualified Trustee of the estate of CTD, the Chapter 7 debtor in this case.

4. Defendant Wayne K. Higashi ("W. Higashi"), an individual, was a manager of the Debtor at all relevant times prior to the conversion of this case to Chapter 7.

5. Throughout the pendency of this case as one under Chapter 11 of the Bankruptcy Code, W. Higashi was a resident of this District.

6. Shortly after the conversion of the case to Chapter 7, W. Higashi became, and he is now, a resident of the State of Hawaii.

7. At all relevant times, defendant Rose Higashi ("R. Higashi"), an individual, has been and is the spouse of W. Higashi. (W. Higashi and R. Higashi are sometimes referred to herein collectively as the "Higashis".)

8. At all relevant times, the Higashis have been the trustors and trustees of The Higashi Family Trust.

9. CTD is a California limited liability company which, throughout its active existence,

---

[1] This proceeding has been settled as to defendants Perisho Tombor Brown, PC; Lanlogic, Inc.; Barry N. Young; and Thomas L. Bahrick. This proceeding has been dismissed as to defendant Rose Higashi in her individual capacity only.

had its principal place of business in this District.

10. Defendant Innovative Technologies Licensing and Management Corporation ("ITLMC") is a California corporation having its principal place of business in this District. ITLMC has done business under both its own name, under the name "Epilogics", and, in concert with CTD and other defendant business entities, under the name "The Epilogics Group".

11. Defendant ES Design, LLC ("ES Design") is a suspended California limited liability company.

12. Defendant EPX, Inc. ("EPX") is a dissolved California corporation.

13. Defendant Spruli, LLC ("Spruli") is a suspended California limited liability company.

14. Spruli was formed shortly after the conversion of this case to Chapter 7.

15. Spruli is controlled by W. Higashi.

16. Defendant Robert Marangell ("Marangell"), an individual, is a resident of this District.

17. CTD was actively in business from 2008 to 2012.

**B. The following issues of fact, and no others, remain to be litigated:**

1. At all relevant times, was W. Higashi the largest equity holder of the Debtor?

2. At all relevant times, did W. Higashi exercise dominion and control over ITLMC, ES Design, EPX and/or Spruli (sometimes referred to collectively herein as the "Higashi Entities")?

3. Did the Higashi Entities have commonality of management, directors and officers?

4. Did transfers and commingling of funds exist among the Higashi Entities, and between W. Higashi and said Entities?

5. Did Debtor transfer money, intellectual property and/or other assets (the "W. Higashi Transfers") to or for W. Higashi's benefit, having a total value in excess of $5,000,000?

6. Were the W. Higashi Transfers made with actual intent to hinder, delay or defraud Debtor's creditors?

7. Were the W. Higashi Transfers made without the Debtor receiving a reasonably equivalent value in exchange?

8. At the time of the W. Higashi Transfers, did Debtor and W. Higashi know that Debtor

would not have sufficient funds to pay all of its creditors?

9. During the approximately four years when Debtor was actively in business, did Debtor pay management fees to ITLMC in the amount of approximately $595,000?

10. Did ITLMC's billings to Debtor for management services total approximately $180,000.

11. Did Debtor, EPX and ES Design pay approximately $895,000 to ITLMC?

12. Shortly before the conversion of this bankruptcy case to Chapter 7, did W. Higashi cause Debtor to make payments to attorney Barry Young and certain investors in the company on pre-petition obligations?

13. Did Debtor transfer $1,000,000 or more, and/or equity interests, to or for the benefit of the Higashi Trusts, in an amount in excess of $1,000,000 for insufficient consideration (and, with regard to equity interests, for a smaller per-unit cost than that charged to other investors in Debtor) (collectively the "Trust Transfers") at the time that the respective Trust Transfers were made?

14. Were the Trust Transfers made with actual intent to hinder, delay or defraud the Debtor's creditors?

15. Were the Trust Transfers made without the Debtor receiving a reasonably equivalent value in exchange at the time that the respective Trust Transfers were made?

16. At the time of the Trust Transfers, did Debtor and W. Higashi know that Debtor would not have sufficient funds to pay all of its creditors?

17. Did Debtor transfer money in the amount of $1,000,000 or more (the "ITLMC Transfers") to or for the benefit of ITLMC and/or W. Higashi?

18. Were the ITLMC Transfers made with actual intent to hinder, delay or defraud the Debtor's creditors?

19. Were the ITLMC Transfers made without the Debtor receiving a reasonably equivalent value in exchange at the time that the respective ITLMC Transfers were made?

20. At the time of the ITLMC Transfers, did Debtor and W. Higashi know that Debtor would not have sufficient funds to pay all of its creditors?

21. Did Debtor transfer money in the amount of $1,000,000 or more (the "EPX

Transfers") to or for the benefit of EPX and/or W. Higashi?

22. Were the EPX Transfers made with actual intent to hinder, delay or defraud the Debtor's creditors?

23. Were the EPX Transfers made without the Debtor receiving a reasonably equivalent value in exchange at the time that the respective EPX Transfers were made?

24. At the time of the EPX Transfers, did Debtor and W. Higashi know that Debtor would not have sufficient funds to pay all of its creditors?

25. Did Debtor transfer money (the "ES Design Transfers") to or for the benefit of ES Design and/or W. Higashi?

26. Were the ES Design Transfers made with actual intent to hinder, delay or defraud the Debtor's creditors?

27. Were the ES Design Transfers made without the Debtor receiving a reasonably equivalent value in exchange at the time that the respective ES Design Transfers were made?

28. At the time of the ES Design Transfers, did Debtor and W. Higashi know that Debtor would not have sufficient funds to pay all of its creditors?

29. Did W. Higashi cause Debtor to transfer to Marangell money and/or equity interests (the "Marangell Transfers") valued at more than $480,000?

30. Were the Marangell Transfers made with actual intent to hinder, delay or defraud CTD's creditors?

31. Were the Marangell Transfers made without Debtor receiving a reasonably equivalent value in exchange at the time that the respective Marangell Transfers were made?

32. At the time of the Marangell Transfers, did Debtor and W. Higashi know that Debtor would not have sufficient funds to pay all of its creditors?

33. On or after the petition date, did W. Higashi cause Debtor to transfer patents, other intellectual property, good will, and/or other assets of Debtor to Spruli, either directly or through intermediate transferee ITLMC (the "Spruli Transfers")?

34. As a result of the Spruli Transfers, does Spruli hold such assets and has Spruli utilized them for business purposes?

35. On or after the petition date, did W. Higashi, either independently or through one or more of the other defendants, appropriate, scrap, sell and/or offer for sale inventory and other assets (the "Inventory Transfers") of Debtor?

36. Were the Inventory Transfers authorized?

37. Did the Debtor receive the full benefit from the Trust Transfers?

38. Did the Debtor receive a reasonably equivalent value in exchange for the Trust Transfers?

39. Were the Trust Transfers made intentionally, maliciously, fraudulently and/or oppressively?

40. With regard to each of the avoidable transfers alleged by the Trustee, was each of the defendants either the initial transferee, the person or entity for whose benefit such transfer was made, or the immediate or mediate transferee of the initial transferee of such transfer?

**C. The following issues of law, and no others, remain to be litigated:**

1. Are W. Higashi and some or all of the Higashi Entities each other's alter egos, jointly and severally liable for the relief and damages sought by the Trustee?

2. Were any or all of the W. Higashi Transfers avoidable under 11 U.S.C. §§ 544 and 548?

3. Are the Trust Transfers avoidable under 11 U.S.C. §§ 544 and 548?

4. Are the ITLMC Transfers avoidable under 11 U.S.C. §§ 544 and 548?

5. Are the EPX Transfers avoidable under 11 U.S.C. §§ 544 and 548?

6. Are the ES Design Transfers avoidable under 11 U.S.C. §§ 544 and 548?

7. Are the Marangell Transfers avoidable under 11 U.S.C. §§ 544 and 548?

8. Are the Spruli Transfers avoidable under 11 U.S.C. § 549?

9. Are the Inventory Transfers avoidable under 11 U.S.C. § 549?

10. Is the Trustee entitled to recover, for conversion, punitive and exemplary damages against W. Higashi by virtue of the Trust Transfers?

11. Is the Trustee entitled to recover his costs and expenses in pursuit of the converted assets?

12. Did the transfers alleged by the Trustee severely deepen Debtor's insolvency to the

detriment of Debtor and its creditors?

13. Did W. Higashi owe fiduciary duties to Debtor, including the duty of loyalty and the duty of care?

14. Did W. Higashi breach said duties by the conduct alleged by the Trustee?

15. Did W. Higashi cause the transfers to be made intentionally, maliciously, fraudulently and/or oppressively, with a willful and conscious disregard of the Debtor's rights, so as to entitle the Trustee to punitive and exemplary damages for breach of fiduciary duty?

16. Shall the transfers avoided under 11 U.S.C. §§ 544, 548 or 549 be preserved for the benefit of the bankruptcy estate?

17. Is the estate entitled to recover, pursuant to 11 U.S.C. § 550, the property transferred or its value, together with interest at the highest lawful rate?

**D. The appropriate measure of damages is:**

With regard to pre-petition avoidable transfers: The amount of money or value of assets transferred.

With regard to post-petition avoidable transfers: The amount of money or value of assets transferred.

With regard to conversion: For the amount of money and value of assets converted, plus exemplary or punitive damages in such amount as the Court deems proper, and reimbursement of the Trustee's costs and expenses in pursuit of the converted assets.

With regard to breach of fiduciary duty: For the amount of money and value of assets converted, plus exemplary or punitive damages in such amount as the Court deems proper.

**E. The parties have exchanged lists of witnesses to be called at trial.**

**F. The parties have exchanged all other non-testimonial evidence to be used at trial including: documents, expert reports, physical evidence.**

**G. The parties have stipulated to the admission, for all purposes, of all documents listed on their respective Exhibit Lists.**

**H. The parties have objections to the following documents: None.**

/ / / / /

**I. Other matters that might affect the trial:**

The parties continue to actively discuss settlement of this adversary proceeding, and will keep the Court informed of their efforts and progress.

**J. Trustee's List of Exhibits to be Offered at Trial:**

1. CT Drives General Ledger – complete
2. Union Bank statements received by trustee
3. Union Bank production 2014 complete (with page numbers)
4. (blank)
5. Profit and loss—cumulative
6. Audit trail
7. (blank)
8. Expenses by vendor—cumulative
9. CT Drives check register 02.08-02.09
10. CT – UPA – January 2011 – Ledger
11. EPX Note Purchase Agreement
12. CT Drives general ledger – prepaid balance detail
13. QuickBooks—Cash Outflows—all accounts
14. CT Drives tax return 2010
15. Statement of financial affairs – CT Drives
16. List of Equity Holders – CT Drives
17. Petition – CT Drives
18. Marangell consulting agreement
19. Marangell compensation agreement
20. ES Design unit option agreement – Marangell
21. Marangell—unit purchase agreement
22. (blank)
23. ES Design SOS record
24. Marangell check 1

| | | |
|---|---|---|
| 25. | Marangell check 2 | |
| 26. | Schedules – CT Drives | |
| 27. | Unit award agreement – Marangell | |
| 28. | Marangell compensation proposal | |
| 29. | (blank) | |
| 30. | (blank) | |
| 31. | Convertible note purchase agreement | |
| 32. | EPX shareholders | |
| 33. | Emails between N. Pagonis and W. Higashi | |
| 34. | Lisa Black resume | |
| 35. | BMW lease application | |
| 36. | Kuhl Wheels assignment | |
| 37. | Stan Watt judgment against Kuhl Wheels | |
| 38. | Kuhl assignment 03.03.09 | |
| 39. | Email from W. Higashi to D. Gasiorek | |
| 40. | Post-petition payment to B. Young | |
| 41. | Check to Bouchers post-conversion | |
| 42. | 12.01.03 email from C. Cali to W. Higashi regarding ES Design, etc. | |
| 43. | ES Design dissolution | |
| 44. | Emails among Higashi, Bump, Marangell | |
| 45. | Audit trail exemplar | |
| 46. | Bahrick email regarding ESD dissolution | |
| 47. | Chemtura-CT Drives agreement | |
| 48. | Spruli investors Power Point presentation | |
| 49. | (blank) | |
| 50. | (blank) | |
| 51. | Consent to Bahrick joint representation | |
| 52. | Bahrick "01.14" billing to Higashi | |

| | | |
|---|---|---|
| 53. | Bahrick "12.15" billing to Higashi | |
| 54. | Cali email to Bahrick regarding ES Design | |
| 55. | Bahrick proof of claim | |
| 56. | Bahrick UCC-1 | |
| 57. | Higashi email to investors 04.26.11 | |
| 58. | Email to investors 04.26.11 | |
| 59. | Bahrick to Higashi re assignment of assets to Spruli, LLC | |
| 60. | Higashi report to Spruli investors 04.30.13 | |
| 61. | Bahrick email re Spruli 05.03.13 | |
| 62. | Spruli Operating Agreement | |
| 63. | Higashi email re Spruli operating agreement | |
| 64. | Fitz assignment of technology to Spruli | |
| 65. | Draft assignment of technology | |
| 66. | Spruli articles prepared by Bahrick | |
| 67. | Higashi-Bahrick emails re report to Spruli investors | |
| 68. | Epilogics-Fitz consulting agreement 01.16.13 | |
| 69. | Epilogics-Fitz consulting agreement v.2 | |
| 70. | R. Higashi email to W. Higashi 04.27.09 | |
| 71. | Emails exchanged between Trustee and W. Higashi regarding CT Drives assets | |
| 72. | Email from W. Healy to Trustee | |
| 73. | CT Drives Operating Agreement | |
| 74. | Spruli Articles of Organization | |
| 75. | Higashi-Prieur email exchange depo. Exh. 34 | |
| 76. | Higashi email to Patterson 03.11.12 | |
| 77. | Higashi-Dayco emails | |
| 78. | Higashi-Likens emails | |
| 79. | Higashi-Handa emails | |
| 80. | Higashi-Ouziel emails | |

| | |
|---|---|
| 81. | (blank) |
| 82. | Email string—Bahrick-Marangell-Higashi |
| 83. | US Patent 8,272,982 B2 |
| 84. | Kuhl Wheels – dissolution |
| 85. | QuickBooks – CT Drives-EPX transactions |
| 86. | USPTO Assignments to Means |
| 87. | SB-35 Non-Publication Request |
| 88. | Patent assignment by Hampton, Fitz |
| 89. | USPTO action 12.21.12 |
| 90. | Spring Polymer Patent Mod. Draft 2 02.23.12 |
| 91. | ES Design 2011 U.S. tax return |

**K. Defendants' List of Exhibits to be Offered at Trial:**

Exhibit 1: Email from Plaintiff's Counsel - Waiver of Claims re CT Drives, LLC ("CTD") Personal Property

Exhibit 2: Union Bank Statement re BMW Lease Payment

Exhibit 3: CTD Financial Statements

Exhibit 4: Invoices for Consulting Services by Defendant Robert Marangell ("Marangell")

Exhibit 5: Documents in Support of Consulting Services by Marangell

Exhibit 6: Summary of Financing of CTD by Defendant EPX

Exhibit 7: United States Patent and Trademark Office Assignment Assignor/Assignee Records

Exhibit 8: Union Bank Statements re CTD

Exhibit 9: Letter from Defendants' Counsel to Plaintiff's Special Counsel re Plaintiff's Responses to Defendants' Interrogatories

Exhibit 10: 2010 CTD General Ledger

Exhibit 11: 2011 CTD General Ledger

Exhibit 12: Exhibit 17 to Marangell Deposition

Exhibit 13: Exhibit 18 to Marangell Deposition

| | |
|---|---|
| 1 | Exhibit 14: Exhibit 19 to Marangell Deposition |
| 2 | Exhibit 15: Exhibit 19A to Marangell Deposition |
| 3 | Exhibit 16: Exhibit 20 to Marangell Deposition |
| 4 | Exhibit 17: Exhibit 21 to Marangell Deposition |
| 5 | Exhibit 18: Exhibit 22 to Marangell Deposition |
| 6 | Exhibit 19: Exhibit 23 to Marangell Deposition |
| 7 | Exhibit 20: Exhibit 24 to Marangell Deposition |
| 8 | Exhibit 21: Exhibit 25 to Marangell Deposition |
| 9 | Exhibit 22: Exhibit 26 to Marangell Deposition |
| 10 | Exhibit 23: Exhibit 27 to Marangell Deposition |
| 11 | Exhibit 24: Exhibit 28 to Marangell Deposition |
| 12 | Exhibit 25: Exhibit 29 to Marangell Deposition |
| 13 | Exhibit 26: Exhibit 30 to Marangell Deposition |
| 14 | Exhibit 27: Exhibit 31 to Marangell Deposition |

**L. Trustee's List of Witnesses to be Offered at Trial:**

1. Thomas Bahrick
2. Dan Behne
3. Lisa Black
4. Peter Bronson
5. Connard Cali
6. Art Closson
7. Frank Fitz
8. George Hampton
9. William Healy
10. Fred Hjelmeset
11. Rose Higashi
12. Wayne Higashi
13. Robert Marangell

14. Tom Marx
15. Paul Pires
16. Glen Rossman
17. Barry Young

**M. Defendants' List of Witnesses to be Offered at Trial:**

1. Thomas L. Bahrick
2. Art Closson
3. Connard Cali
4. Wayne Higashi
5. Robert Marangell
6. Luis Ramirez
7. Barry Young

DATED: January 18, 2018

Respectfully submitted,

Peter C. Bronson
LAW OFFICES OF PETER C. BRONSON
A Professional Corporation

By  */s/ Peter C. Bronson*
      Peter C. Bronson
Attorneys for Plaintiff

William C. Milks, III
LAW OFFICES OF WILLIAM C. MILKS, III

By  */s/ William C. Milks, III*
      William C. Milks, III
Attorneys for Defendants