ORIGINAL

FILED
APR 5 - 2018
United States Bankruptcy Court
San Jose, California

William C. Milks, III (State Bar Number 114083)
Law Offices of William C. Milks, III
40 Main Street
Los Altos, CA 94022
Tel.: (650) 930-6780
Fax: (650) 949-0844
Email: bmilks@sbcglobal.net

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| *In re* CT DRIVES, LLC,<br><br>　　Debtor. | Case No. 11-60198 SLJ<br><br>Chapter 7<br><br>Adversary No. 13-05154 |
| FRED HJELMESET, Chapter 7 Trustee,<br><br>　　Plaintiff,<br><br>vs.<br><br>WAYNE K. HIGASHI, individually and as Trustee of THE WAYNE K. HIGASHI TRUST and of THE HIGASHI FAMILY TRUST, aka THE HIGASHI FAMILY REVISED TRUST, aka the 2010 HIGASHI FAMILY TRUST; ROSE HIGASHI, individually and as Trustee of THE HIGASHI FAMILY TRUST, aka THE HIGASHI FAMILY REVISED TRUST, aka the 2010 HIGASHI FAMILY TRUST; INNOVATIVE TECHNOLOGIES LICENSING AND MANAGEMENT CORPORATION, a California corporation, dba Epilogics, dba The Epilogics Group; EPX, INC., a California corporation; ES DESIGN, LLC, a California limited liability company; THOMAS L. BAHRICK, an individual; BARRY N. YOUNG, an individual; ROBERT MARANGELL, an individual; PERISHO TOMBOR BROWN, PC, a California corporation; LANLOGIC, INC., a California corporation; and SPRULI, LLC, a California limited liability company,<br><br>　　Defendants. | **DEFENDANT WAYNE K. HIGASHI'S MOTION TO STRIKE PLAINTIFF'S RESPONSE TO POST-TRIAL BRIEF OF DEFENDANT WAYNE K. HIGASHI** |

1
DEFENDANT WAYNE K. HIGASHI'S MOTION TO STRIKE PLAINTIFF'S RESPONSE BRIEF　　　　　Adv. No. 13-05154

Case: 13-05154    Doc# 154    Filed: 04/05/18    Entered: 04/05/18 13:46:24    Page 1 of 8

Pursuant to the prior authorization of the Court, the undersigned hereby submits Defendant Wayne K. Higashi's Motion to Strike Plaintiff's Response to Post-Trial Brief of Defendant Wayne K. Higashi.

**DEFENDANT WAYNE K. HIGASHI'S MOTION TO STRIKE PLAINTIFF'S RESPONSE TO POST-TRIAL BRIEF OF DEFENDANT WAYNE K. HIGASHI**

**I. INTRODUCTION**

I, Wayne K. Higashi (hereinafter referred to as "Higashi") hereby submit my Motion to Strike Plaintiff's Response to Post-Trial Brief of Defendant Wayne K. Higashi filed on March 28, 2018 (hereinafter referred to as "Plaintiff's 03-28-2018 Response Brief"). Higashi respectively submits that Plaintiff Fred Hjelmeset, the Chapter 7 Trustee (hereinafter referred to as the "Trustee") for the debtor CT Drives, LLC (hereinafter referred to as "CTD") didn't respond in any substantive way to the "POST-TRIAL BRIEF ON BEHALF OF DEFENDANT WAYNE K. HIGASHI" filed on March 14, 2018 (hereinafter referred to as "Higashi's 03-14-2018 Brief") to rebut Higashi's position that the Trustee did not prove at the trial that Higashi himself (or the Higashi Family Trust, any of the companies of the Epilogics Group, or Spruli) received any avoidable transfers of CTD's assets.

Because he has no substantive basis to rebut Higashi's position, Plaintiff's 03-28-2018 Response Brief instead attempts to discredit Higashi in view of his wife's website describing travels by the Higashis.[1] However, there is no nexus between the website and the Trustee's claims against Higashi or any of the other defendants.

The Trustee has always made unfounded general accusations of impropriety against Higashi in this case without presenting evidence to show that any of those accusations are true. Plaintiff's 03-28-2018 Response Brief is no exception to the Trustee's *modus operandi*. The Trustee failed to present evidence at the trial that Higashi, or for that matter any entity with which Higashi was involved, received avoidable transfers of money and other assets either to himself or for his benefit to the tune of "$8,664,545.55 to $23,664,545.55." *See*, Plaintiff's 03-28-2018 Response Brief at 1:18-19. The Court cannot possibly believe that wild and unfounded accusation, because if true, CTD would have been a very successful company and would have never filed for bankruptcy. The Court must ask and answer the question: Did the Trustee prove

---

[1] The Trustee is jumping the gun, because the Court has not granted the Trustee's request to take judicial notice of that website.

that "$8,664,545.55 to $23,664,545.55" in transfers of CTD's assets went to Higashi? The truth is that the answer is "No," and the Court should arrive at the same answer: "No."

Insofar as the Higashi Family Trust mentioned in Plaintiff's 03-28-2018 Response Brief is concerned, the Trustee's claim that an avoidable transfer to the Higashi Family Trust occurred based on the Trust paying less than any other investor for CTD Units is a false claim, as shown by the evidence presented at the trial. Apparently, the Trustee is so jaundiced that he will even stoop to making false representations about the Higashi Family Trust to the Court in his desperation to salvage his case.

The Trustee has clearly demonstrated that when you don't have the facts on your side, you argue the law, and when you don't have either the facts or the law on your side, you try to convince the Court to ignore the facts and the law and focus on *"ad hominem* attacks" on the other party and false claims to influence the Court to win your case. However, the Court said that the Trustee had the burden of proof to show that Higashi actually did something wrong. Higashi believes that if justice is to be served, the Court will find that the Trustee failed to prove his case, and certainly the Court cannot possibly find that Higashi or any of the other defendants received money or assets of CTD in the preposterous amount of "$8,664,545.55 to $23,664,545.55." One wonders, and asks the Court to ponder, where during the trial did the Trustee prove that such monies or other CTD assets having such a value ever existed? For the Court to join the Trustee in such a flight of fantasy (and a speculative one at that) would be a travesty of justice in the Nth degree.

## II. THE TRUSTEE'S RESPONSE TO HIGASHI'S POST-TRIAL BRIEF IS UTTERLY NON-RESPONSIVE AND SHOULD BE STRICKEN BY THE COURT.

Higashi's 03-14-2018 Brief explicitly identified the "Issues of Fact to be Litigated" by the Trustee against him or for his benefit. *See*, Higashi's 03-14-2018 Brief at 4:1-6:21. Plaintiff's 03-28-2018 Response Brief did not reply to any of those issues discussed in Higashi's 03-14-2018 Brief.[2]

The issues dealt with in Higashi's 03-14-2018 Brief that Plaintiff's 03-28-2018 Response Brief failed to respond to can be summarized as follows:

---

[2] In comparison, the Court will note Higashi responded to each and every one of the contentions by the Trustee in detail in Higashi's Post-Trial Reply Brief filed on March 28, 2018.

3

DEFENDANT WAYNE K. HIGASHI'S MOTION TO STRIKE PLAINTIFF'S RESPONSE BRIEF      Adv. No. 13-05154

1. CTD never had assets with a valuation in excess of $5,000,000 that could have possibly been transferred to Higashi or to any other entity for his benefit. (*See*, Higashi's 03-14-2018 Brief at 4:1-4:7.)

2. The approximately $595,000 transferred to ITLMC during the four years that CTD was in business were for expenses paid by ITLMC on behalf of CTD that were charged to and reimbursed by CTD, including payroll expenses charged to CTD based on the portion of the time that personnel employed by ITLMC worked for CTD. (*See*, Higashi's 03-14-2018 Brief at 4:9-4:21.)

3. The management fees paid by CTD to ITLMC of approximately $180,000 were made in accordance with CTD's Operating Agreement. (*See*, Higashi's 03-14-2018 Brief at 4:22-5:1.)

4. The payments to ITLMC by CTD, EPX, and ES Design of approximately $895,000 were to reimburse ITLMC for expenses paid for each of those entities by ITLMC and salaries of personnel prorated among those entities, as well as management fees paid by those entities to ITLMC in accordance with the operating agreements of the respective entities. (*See*, Higashi's 03-14-2018 Brief at 5:2-5:8.)

5. The monies that CTD transferred to EPX were to repay loans and advances made by EPX to CTD and to redeem units of CTD held by EPX and its investors so that EPX could be dissolved. (*See*, Higashi's 03-14-2018 Brief at 5:9-5:20.)

6. Marangell only received units in CTD for the work that he did for CTD during the time he was a financial consultant, and those units would only have had value if CTD's financial position improved substantially, which never happened. (*See*, Higashi's 03-14-2018 Brief at 5:21-5:27.)

7. Higashi's salary which CTD was obligated to pay was reduced by the amount of the expenses for the leased BMW. (*See*, Higashi's 03-14-2018 Brief at 6:1-6:5.)

The Court will note that Plaintiff's 03-28-2018 Response Brief did not respond to any of these issues discussed in Higashi's 03-14-2018 Brief.

### III. THE TRUSTEE HAD THE BURDEN OF PROOF.

Instead of specifically responding to the issues discussed in Higashi's 03-14-2018 Brief, the Trustee summarily concludes that: "The ledgers and bank statements are replete with mostly uncontested evidence of avoidable transfers made to or for Higashi's benefit." *See*, Plaintiff's 03-28-2018 Response Brief at 1:13-15. However, the Court will recall that the Trustee did not

4

question Higashi about the specific transactions contained in CTD's "ledgers and bank statements" during the trial, nor did the Trustee present any other sponsoring witness to testify whether any specific transaction contained in the ledgers and bank statements evidenced a transfer to Higashi or how any specific transfer not made directly to Higashi solely benefitted Higashi, much less the specific amount of any such transfer.[3] The Trustee's default did not shift the burden of proof to Higashi to prove that transfers were not to him or not for his benefit.

Nevertheless, the Trustee's rhetoric apparently seeks to have the Court ignore evidence presented during the trial. For example, Marangell presented evidence that the total amount of consulting fees that Higashi received in 2010 was only $28,800.00 and $0.00 in 2011 (Exhibit C at pages 7 and 9, account number 7272), evidencing that the BMW expenses were offset against consulting fees for the years during which the BMW was leased. The Trustee did not rebut that evidence. Moreover, the evidence presented at the trial showed that all of the transactions between CTD and EPX were accounted for, and in the end, the investors in EPX, L.P. invested $354,955 in CTD (91% of the valuation of EPX, L.P. on liquidation of that company) after all legitimate debt and other obligations were repaid by CTD to EPX, Inc./L.P., rather than being transfers to Higashi or for his benefit. (Exhibit F at page 1).

As a result, the Trustee did not carry his burden of proof. Instead, the Trustee relies on accusation and insinuation of wrongdoing by Higashi as a substitute for evidence. Moreover, the Trustee did not present any concrete evidence of damages, and instead asks the Court to speculate and arbitrarily pick a number in the preposterous range of "8,664,545.55 to $23,664,545.55."

### IV. THE TRUSTEE ADMITS THAT HIS RESPONSE TO HIGASHI'S POST-TRIAL BRIEF IS SUPERFLUOUS.

In Plaintiff's 03-28-2018 Response Brief, the Trustee in his typical conclusory fashion without specifically referencing any evidence concludes:

> "In his Opening Post-Trial Brief, the Trustee explained the scope and pattern of transfers to and among Higashi and his *alter ego* entities: CTD, ES Design, LLC; EPX, Inc.; Innovative Technologies Licensing and Management Corporation; Spruli, LLC; and the Higashi Family Trust ("Trust")."

*See*, Plaintiff's 03-28-2018 Response Brief at 3:12-15.

---

[3] The Trustee even concedes "…lack of evidence of each of the specific wrongful transfers upon which the Trustee's claims are based." *See*, Plaintiff's 03-28-2018 Response Brief at 1:11-12.

5

Case: 13-05154    Doc# 154    Filed: 04/05/18    Entered: 04/05/18 13:46:24    Page 5 of 8

That is, the Trustee simply refers to "his Opening Post-Trial Brief," rather than responding in any substantive way to the issues discussed in Higashi's 03-14-2018 Brief. Thus, the Trustee admits that, at bottom, Plaintiff's 03-28-2018 Response Brief is superfluous to "his Opening Post-Trial Brief." Because it is abundantly clear that Plaintiff's 03-28-2018 Response Brief contains no substantive discussion of Higashi's 03-14-2018 Brief, the Court should strike Plaintiff's 03-28-2018 Response Brief as being non-responsive and superfluous.

## V. PLAINTIFF'S 03-28-2018 RESPONSE BRIEF IMPROPERLY RAISES A NEW ISSUE POST-TRIAL.

The motive of the Trustee in filing his otherwise superfluous Plaintiff's 03-28-2018 Response Brief is apparent. Seizing a last-minute opportunity to besmirch Higashi and his wife, the Trustee argues that their travels are somehow related to this adversary proceeding by stating: "Not only do CTD's books, records and bank statements show the millions of dollars taken out of CTD; but also,…the Higashis have traveled around the world on one luxury vacation after another." *See*, Plaintiff's 03-28-2018 Response Brief at 2:11~14.

Here, the Trustee assumes that his Request for Judicial Notice will be granted by the Court, which would be improper as will be pointed out in Higashi's accompanying objection to that request. The request is improper 1) as being untimely and 2) as being directed to irrelevant subject matter.

Furthermore, Plaintiff's 03-28-2018 Response Brief misrepresents to the Court that: "In Spring 2018, the Higashis flew to Miami, took a cruise from Miami to Cuba, and had an extensive tour of Cuban cities and attractions." *See*, Plaintiff's 03-28-2018 Response Brief at 3:2-5. It is simply untrue that the Higashis traveled to Cuba between March 21, 2018 and March 28, 2018 (the date of Plaintiff's 03-28-2018 Response Brief).

Clearly, the Trustee is belatedly attempting to discredit Higashi by accusatorily stating that: "The conclusion is inescapable that his diversion of money and other assets at the expense of CTD and its creditors have made his lavish lifestyle possible." *See*, Plaintiff's 03-28-2018 Response Brief at 2:11~14. However, the Trustee failed to present evidence at the trial to establish that Higashi received avoidable transfers of CTD's assets. The Trustee simply engages in a flight of fantasy, and the only "inescapable conclusion" is that the Trustee recognizes that he did not prove his case and has no other recourse than to besmirch Higashi.

## VI. THE TRUSTEE IMPROPERLY REQUESTS ADDITIONAL RELIEF.

The Trustee then attempts to leverage the accusations in Plaintiff's 03-28-2018 Response Brief as follows:

> The entities in question lacked separate books and records, and there are no documents establishing how the Trust accounted for transfers made into and out of the Trust; or showing that the Trust even existed. Judgment should be entered jointly and severally against Higashi and these entities in order to preclude further evasive transfers among the parties."

*See*, Plaintiff's 03-28-2018 Response Brief at 3:15-19.

First, the basis for the Trustee's argument is belied by the evidence presented at the trial. Marangell testified that separate books and records were maintained for CTD, ES Design, LLC, EPX, Inc., and ITLMC. The Trustee did not present any evidence that any CTD assets were actually transferred to Spruli, LLC; and Higashi testified that Spruli was simply formed to purchase the assets of CTD out of bankruptcy, which never happened.

As far as the Higashi Family Trust is concerned, the Trustee's claim that Higashi self-dealt to acquire CTD Units for the Trust at a price less than what other investors paid at the time is contradicted by the evidence presented at the trial. Exhibit E at pages 74-75 demonstrates at line 4 on page 75: "Higashi Family Trust   150000 [Dollars]   60,000 [Units in CTD]." (Exhibit E at page 75). This represents an investment by the Trust of $150,000.00 for 60,000 Units in CTD, which is $2.50 per Unit which is what other investors were paying at the time. Therefore, the Trustee's claim that the Higashi Family Trust underpaid by $225,000.00 for the 60,000 Units that it actually purchased is false. This false claim made by the Trustee cannot be the basis for any relief granted against the Higashi Family Trust, or against the Higashis either individually or as trustees of the Trust.

## VII. CONCLUSION

For at least the foregoing reasons, Plaintiff's 03-28-2018 Response Brief is non-responsive to the issues discussed in Higashi's 03-14-2018 Post-Trial Brief. Moreover, Plaintiff's 03-28-2018 Response Brief lacks any substance and merely refers to Plaintiff's 03-14-2018 Brief regarding his claims against Higashi. It is abundantly clear that Plaintiff's 03-28-2018 Response Brief is superfluous.

Plaintiff's 03-28-2018 Response Brief also attempts to introduce a new issue based on an

7

improper request for judicial notice. Moreover, Plaintiff's 03-28-2018 Response Brief perpetuates the Trustee's reliance on a false a claim against the Higashi Family Trust and the Higashis for an avoidable transfer to now request joint and several liability with other defendants in the case.

    The Court should strike Plaintiff's 03-28-2018 Response Brief.

Respectfully Submitted on Behalf of
Defendant Wayne K. Higashi, *pro se*

Dated: April 5, 2018

*/s/ William C. Milks, III*
William C. Milks, III